## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-60141-CR-ALTMAN

**UNITED STATES OF AMERICA**,

     *Plaintiff*,

v.

**RICARDO CARLOS LEIJA**,

     *Defendant*.

_____/

### <u>ORDER</u>

Before the Hon. Roy K. Altman:

The Defendant, Ricardo Carlos Leija, tried to strike a deal with a stranger that would have allowed him to have sex with that stranger's nine-year-old daughter. Unfortunately for Leija, the stranger turned out to be an undercover agent whose colleagues had orchestrated the sting operation that later resulted in Leija's guilty plea. For the crime of attempting to produce child pornography, this Court sentenced Leija to 300 months in prison. Now, just eight months later, Leija urges the Court to set aside the remaining 97.5% of his sentence because, he says, his high cholesterol and hypertension make him particularly susceptible to the novel coronavirus.[1] *See* the Defendant's Emergency Motion for Compassionate Release (the "Motion") [ECF No. 66].

Leija's Motion fails for two reasons. *First*, he cannot show that his high cholesterol and hypertension—both of which are easily treatable with widely-available medications—constitute the kinds of "extraordinary and compelling reasons" that would justify the truly exceptional remedy he seeks. *Second*, he has failed to establish that he is no longer a danger to his community.

---

[1] The novel coronavirus, also known as SARS-CoV-2, causes a disease called COVID-19.

Because, in sum, Leija has not met the criteria under 18 U.S.C. § 3582(c)(1)(A), his Motion is **DENIED**.

## THE FACTS

In his Factual Proffer, Leija admitted to texting with what turned out to be an undercover agent about traveling to South Florida to have sex with the undercover's nine-year-old daughter. Factual Proffer [ECF No. 35] at 2. During one of these chats, Leija asked the agent to send him a video of his daughter engaged in sexual activity and offered to send the agent a $40 gift card for the trouble. *Id.* at 3. When the agent agreed, Leija sent him the gift card. *Id.* at 4. In exchange, the agent mailed Leija a locked thumb drive—and then texted him instructions on how to open it. *Id*. Leija was arrested after a search warrant was executed in his home. *Id*. Soon after he was indicted, Leija pled guilty to one count of attempted production of child pornography. *See* Judgment [ECF No.50] at 1. In October of 2019, this Court sentenced Leija to 300 months in prison. *Id.* at 2.

Today, just eight months later, Leija is 50 years old. By his own account, he is healthy, except for his hypertension and high cholesterol—both of which he treats with medication. *See* Mot. at 4; Response to Motion [ECF No. 67] at 2. Nevertheless, Leija insists that both conditions increase the risk that, *if* he becomes infected with COVID-19, he could suffer serious complications. Mot. at 4.

The spread of COVID-19 has been pervasive and devastating. It has challenged institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. More fundamentally, it goes without saying, the pandemic has resulted in widespread suffering. In the United States alone, more than 2,400,000 people have tested positive for the disease, and over 120,000 Americans have died from it. *Cases in U.S.*, CDC (Jun. 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

That said, the Bureau of Prisons (the "BOP") has taken extraordinary measures to protect its inmate population. Starting months ago, the BOP began addressing the risks of COVID-19. *See Federal Bureau of Prisons COVID-19 Action Plan*, Federal Bureau of Prisons (Mar. 13, 2020 3:09 PM ET), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Early in the year, the BOP formed an Action Plan in close consultation with both the Center for Disease Control (the "CDC") and the World Health Organization ("WHO"). *Id.* And, by March 31, 2020, the BOP implemented Phase 5 of its Action Plan, which included a mandatory fourteen-day quarantine for all inmates, restrictions on inmate movement, new inmate screening procedures, and efforts to maximize social distancing. *COVID-19 Action Plan: Phase Five*, Federal Bureau of Prisons (Mar. 31, 2020 6:30 PM ET), https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp.

Leija is currently detained at the low-security Federal Correctional Institution Seagoville ("FCI Seagoville") in Seagoville, Texas. *See* Resp. at 1. In keeping with BOP protocol, FCI Seagoville has implemented strict screening protocols for all inmates and staff, which include quarantining both symptomatic inmates and asymptomatic inmates who fall into higher-risk categories. *See* Resp. at 2. FCI Seagoville has also modified its operations to maximize social distancing by, among other things, suspending visitations, staggering meal and recreation times, and limiting inmates to three showers per week. *See id.*; *see also FCI Seagoville*, Federal Bureau of Prisons (June 25, 2020, 4:15 PM ET), https://www.bop.gov/locations/institutions/sea/; *BOP Modified Operations*, Federal Bureau of Prisons (Jun. 25 2020, 2:30 PM ET), https://www.bop.gov/coronavirus/covid19_status.jsp. And, like many other federal prisons, FCI Seagoville requires that new inmates—or inmates who have left the facility for any reason—be tested before they are released into the general population. *See BOP Modified Operations* Federal Bureau of Prisons (Jun. 25 2020, 2:30 PM ET),

https://www.bop.gov/coronavirus/covid19_status.jsp. Because of these efforts, as of this writing,

FCI Seagoville has *not had a single inmate test positive* for COVID-19. Resp. at 3.

## THE LAW

A district court has "no inherent authority" to modify an already-imposed term of

imprisonment. *See United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir.

2002) (internal quotation mark omitted). Instead, "[t]he authority of a district court to modify an

imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190,

1194–95 (11th Cir. 2010); *see* 18 U.S.C. § 3582(c). As relevant here, a district court may modify

an imprisonment sentence "to the extent otherwise expressly permitted by statute or by Rule 35 of

the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582.

Section 3582 sets out the order in which this Court should analyze a criminal defendant's

entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the

Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure

of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a]

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,

whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[ ] the factors

set forth in section 3553(a) to the extent that they are applicable." *Id*. *Third*, the Court should turn

to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13cmt. n.1.

And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any

other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id*. *See United States v.

Stuyvesant*, 2020 WL 1865771, at *2 (S.D. Fla. April 14, 2020).

## ANALYSIS

### I.   Exhaustion of Administrative Rights to Appeal

Under § 3582(c)(1)(A), this Court may consider Leija's Motion  only "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after* the defendant has *fully exhausted* all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant' facility, whichever is earlier . . . " (emphasis added). The statute is therefore clear that, before he may seek redress in federal court, Leija must *fully* exhaust his administrative remedies.

Although Leija admits that he failed to exhaust his administrative remedies *before* he filed his Motion, he urges this Court to consider the merits of his claim anyway. *See* Mot. at 2. In support, he advances two arguments. *First*, he says that this Court can simply ignore the exhaustion requirement. *Id*. *Second*, noting that Seagoville's Warden ultimately denied his claim after this Motion was filed, he argues that his administrative remedies have been (by now) exhausted. *See* Reply [ECF No. 69] at 1.

Leija's waiver argument merits little discussion. It is true, as Leija points out, that a few district court judges—none in this District—have agreed to waive the exhaustion requirement in similar circumstances. *See* Mot. at 2 (citing, *e.g.*, *United States v. Sawicz*, 2020 WL 1815851, at *2 (E.D.N.Y. Apr 10, 2020); *United States v. McCarthy*, 2020 WL 1698732, at *1 (D. Conn. Apr. 8, 2020)). In doing so, however, these judges ignored the plain meaning of the words in § 3582(c)(1)(A), which requires exhaustion and admits of *no exceptions*.

The Supreme Court has distinguished between exhaustion requirements that are mandated by statute and those that are judicially-created. *See McCarthy v. Madigan*, 503 U.S. 140, 144

(1992). "Where Congress specifically mandates, exhaustion is required. . . . But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* (omitting internal citations). The Eleventh Circuit has made this dichotomy between statutory and judicial exhaustion requirements pellucid. *See Alexander v. Hawk*, 159 F.3d 1321, 1326 (11th Cir. 1998) ("Mandatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply."). As these cases make clear, federal judges may not waive exhaustion requirements that appear unambiguously in the text of a statute.

And the text of § 3582(c)(1)(A) could not be clearer. It says, in pertinent part, that a court "may not" modify a term of imprisonment until "*after* the defendant has *fully exhausted all* administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier…" § 3582(c)(1)(A) (emphasis added). This language is unambiguous and may not be altered by judicial fiat. *See United States v. Kranz*, 2020 WL 2559551, at *2 (S.D. Fla. May 20, 2020) ("The language that Congress chose to use is clear and unambiguous. The Court cannot read exceptions into § 3582(c)(1)(A).").

This conclusion is notably consistent with the decisions of other courts within this District. *See, e.g.*, *United States v. Kranz*, 2020 WL 2559551, at *2–3 (S.D. Fla. May 20, 2020) (noting that, while other district courts outside this District have waived the exhaustion requirement, exhaustion is mandatory under the statute); *United States v. Bunch*, 2020 WL 2839174, at *3 (S.D. Fla. May 28, 2020) (finding that an inmate's failure to exhaust is sufficient cause to deny a motion for compassionate relief); *United States v. Brown*, 2020 WL 2568807, at *4 (S.D. Fla. May 21, 2020) (same); *United States v. Bueno-Sierra*, 2020 WL 2526501, at *4 (S.D. Fla. May 17, 2020) (same); *United States v. Christian*, 2020 WL 2513101, at *3 (S.D. Fla. May 15, 2020) (same);

*United States v. Zamor*, 2020 WL 2764282, at *1 (S.D. Fla. May 12, 2020) (same); *United States v. Pimentel*, 2020 WL 2781309 (S.D. Fla. April 28, 2020) (same). Leija's attempt to justify the waiver he seeks by pointing to other district court cases is thus unavailing.

Nevertheless, as noted, Leija separately argues that the Warden's ultimate denial of his claim—albeit *after* he filed his Motion—satisfies the statute's exhaustion requirement. *See* Reply at 1. But, even if this post-Motion denial could satisfy the exhaustion requirement—a question the Court does not reach today—Leija's motion would, for the reasons set out below, still be denied.

## II.    18 U.S.C. § 3553

After considering the relevant § 3553 factors, this Court sentenced Leija to 300 months in prison. Sentencing Transcript [ECF No. 64] at 25:24; Judgment. In his appeal, which is still pending, Leija argues only that the Court erred in applying the four-level, sadism/masochism enhancement under U.S.S.G. § 2G2.2(b)(3), but he does not otherwise challenge this Court's application of the § 3553 factors to his case. *See* Brief of Petitioner-Appellant at 2, *United States v. Leija*, No. 19-cr-14271 (11th Cir. May 15, 2020). And, having re-reviewed the record, the Court sees no reason to disturb those prior findings. Thus, to the extent they are applicable, the § 3553 factors counsel against a reduction.

## III.    18 U.S.C. § 3582

The statute that governs sentencing reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    (i)    extraordinary and compelling reasons warrant such a reduction; or

    (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; . . .

18 U.S.C. § 3582.

Because Leija is not "at least 70 years of age," he does not qualify for release under § 3582(c)(1)(A)(ii). The viability of his request thus turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But Section 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission (the "Commission") is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

    1.  **Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    **(A) Medical Condition of the Defendant.**

8

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires the Defendant to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

**(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Leija bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

As a preliminary matter, Leija cannot satisfy the "Age of the Defendant" test: He is 50 years old, not 65; he has not alleged any age-related decline; and he has served neither 10 years nor 75% of his overall sentence. His request for relief, then, hinges on his ability to meet either of the two elements of the "Medical Condition of the Defendant" test. The first element requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). The second

requires him to establish that he suffers from any of three conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii).

Leija does not argue that he suffers from (1) a terminal illness, (2) a serious functional or cognitive impairment, or (3) any age-related physical or mental deterioration. *See* Mot. at 5. Instead, he says only that he has a "serious physical or medical condition" that warrants relief under U.S.S.G. § 1B1.13. *Id*. Specifically, Leija points out that he has high cholesterol and hypertension—which could create an "extremely high risk of both catching COVID-19 and suffering severe illness or dying as a result." *Id*. In this respect, Leija claims—and the Court will accept—that hypertension is a leading factor in COVID-19 deaths. *Id.* at 4. As evidence for this proposition, Leija contends that the death rate among COVID-19 patients with pre-existing cardiovascular diseases is about 10%—which compares unfavorably with what he proffers is a 1% death rate for otherwise-healthy COVID-19 patients. *Id*. Finally, Leija suggests that his age (50) and his biological sex (male) "exponentially" increase the likelihood that, if he is infected, he might develop life-threatening complications from COVID-19. *Id*. at 4–5. For the following three reasons, Leija's hypertension, his age, his gender, and his cholesterol levels do not constitute the kinds of "extraordinary and compelling reasons" that would justify the reduction he is seeking.

*First*, "virtually every person over the age of 50 has some health condition that could conceivably put that person at a greater risk of succumbing to the coronavirus, but this does not entitle every inmate over 50 to be released. Attorney General William Barr's memo urging the release of particularly vulnerable inmates is not a get-out-of-jail-free card for every incarcerated person." *United States v. Ballesteros*, 2020 WL 2733647, at *1 (S.D. Fla. May 26, 2020) (finding that an inmate who, during the COVID-19 pandemic, was 50 years old and suffered from

hypertension had failed to satisfy the "extraordinary and compelling reasons" test); *cf. United States v. Brown*, 2020 WL 2568807, at *4 (S.D. Fla. May 21, 2020) (concluding that, even during the COVID-19 pandemic, an inmate who was 44 years old and suffered from hypertension had failed to satisfy the "extraordinary and compelling reasons" test); *United States v. Burkes*, 2020 WL 2308315 (S.D. Fla. May 8, 2020) (petitioner's hypertension, coupled with the COVID-19 pandemic, did not constitute "extraordinary and compelling reasons"). *Second*, Leija does not dispute that he is—and for some time has been—taking medications that have brought his cholesterol and hypertension under control. *See* Resp. at 3. And Leija never suggests that his *controlled* hypertension somehow exposes him to a greater risk of death than that faced by the average inmate. *Third*, Leija does not allege that his health conditions are significantly deteriorating, and "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberthard*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020). The Court sees no reason to depart from the BOP's well-reasoned view on this question.

Leija's Motion, in short, must be **DENIED**.

## IV.   18 U.S.C. § 3142

Even if Leija had exhausted his administrative remedies—and even if he had satisfied the "extraordinary and compelling reasons" test—Leija's Motion would still be denied because he has failed to show that he no longer poses a danger to his community. As the relevant Guidelines provision makes plain, the "extraordinary and compelling reasons" test only applies if "the defendant meets the requirements of subdivision (2)"—that is, only if Leija "demonstrates he no longer poses a threat to society, as defined by 18 U.S.C. § 3142(g)." *United States v. Stuyvesant*, 2020 WL 1865771, at *6 (S.D. Fla. Apr. 14, 2020). And Leija cannot make that showing here.

In assessing dangerousness, Section 3142(g) requires the Court to consider: (1) "the nature and circumstances of the offense . . . , including whether the offense . . . involves . . . a minor victim; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . (A) the person's . . . past conduct . . . [and] criminal history"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Each of these factors weighs in favor of a finding of dangerousness.

*First*, the offense of conviction "involve[d] a minor." *See* Judgment; *see also* Factual Proffer.

*Second*, the evidence against Leija—as set out in the Factual Proffer—was both overwhelming and undisputed. *See* Factual Proffer.

*Third*, Leija was a repeat offender whom this Court specifically found "incapable, at least on the record before me, to rehabilitate himself. He has only graduated, it seems, from viewing to soliciting others to have them abuse their own children, and that graduation, it seems to me, renders him somewhat more dangerous than the average offender in this class." Sentencing Transcript [ECF No. 64] at 24:2–7.[2]

*Fourth*, and for similar reasons, this Court was (just eight months ago) "not at all confident that when the defendant gets out, he won't re-offend or re-offend in an even more serious way, and that gives me pause." Sentencing Transcript [ECF No. 64] at 24:9–11. The Court is not

---

[2] And nothing Leija has done in the last eight months—not his "outstanding" disciplinary record or the "several" classes he has taken, *see* Mot. at 6—alters this conclusion.

persuaded that a sentence of home confinement—in which Leija's Internet-prowling activities would go relatively unmonitored[3]—meaningfully protects the public from this Defendant.

***

The Court therefore **ORDERS** and **ADJUDES** that the Defendant's Emergency Motion for Compassionate Release [ECF No. 66] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 29th day of June 2020.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

---

[3] The pandemic has significantly limited the U.S. Probation Office's ability to conduct routine, in-person checks of its probationers.